UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GLORIA SPRINGER,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>        Defendant. | Case No. 2:12-CV-209 JVB |

**OPINION AND ORDER**

Plaintiff Gloria Springer seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied her application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 416(i), 423 *et seq*. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

On April 28, 2009, Plaintiff applied for disability benefits due to a disabling condition that allegedly began on September 1, 2008. (R. 12.) Plaintiff's claim was denied initially and upon reconsideration. (R. 73–74.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and appeared with counsel on January 12, 2011. (R. 29.)

On February 24, 2011, the ALJ determined Plaintiff was not entitled to Social Security disability benefits. (R. 12–24.) The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since September 1, 2008, the alleged onset date.
3. The claimant has the following severe impairments: obesity; asthma; arthritis in the lower back, left hip, and knees bilaterally; neuropathy; status post left leg fracture with implantation and ocular degeneration.
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
5. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except that she can never climb ladders, scaffolds or ropes; she is limited to only occasional balancing, stooping, kneeling, crouching, crawling or climbing of ramps or stairs; she is limited to only occasional overhead reaching with the dominant upper extremity; she must avoid concentrated exposure to extreme cold, extreme heat, extreme humidity, respiratory irritants and poor ventilation and she is limited to work requiring only simple, routine and repetitive tasks.
6. The claimant is unable to perform any past relevant work.
7. The claimant was born on August 23, 1959, and was forty-nine years old on the alleged disability date, which is defined as a younger individual age eighteen to forty-nine, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.
8. The claimant has at least a high school education and is able to communicate in English.
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2008, through the date of this decision.

(R. 14–24.)

The ALJ's opinion became final when the Appeals Council denied Plaintiff's request for review on March 20, 2012. (R. 1.)

**B. Factual Record**

**(1)** *Plaintiff's Background*

Plaintiff was forty-nine years old on the alleged onset of her disability and is now fifty-four years old. (R. 38.) She graduated from high school, completed two years of college, and is able to communicate, read, and write in English. (R. 23, 40.) Plaintiff has a lengthy work history, which includes working as a medical assistant at multiple doctor's offices and as a supervisor's assistant. (R. 40–46.)

Plaintiff currently lives in home with her boyfriend and boyfriend's brother. (R. 38.) She testified that she is unable to drive due to her medical limitations. (R. 39.) Plaintiff further testified that her day consists of performing personal hygiene, doing very minimal chores, and lying in bed due to her numerous medical conditions. (R. 53.) Plaintiff also testified that her medications cause her to feel dizzy, drowsy, and generally "out of it." (R. 49.)

**(2)** *Medical Evidence*

Plaintiff has a long history of medical ailments that were present before the alleged disability onset date. First, Plaintiff is five feet nine inches tall and weighs 250 pounds, which qualifies as obese under Social Security guidelines. (R. 39.) Next, during an examination in June 2009, by a consultative examiner for the Disability Determination Bureau, Plaintiff complained of diabetes that had been present since 1999, lower back pain that had been present since 2001, left leg pain that had been present since 1995, and right elbow pain that had been present since 1995. (R. 260.) Finally, in 2007, Plaintiff was diagnosed as potentially having glaucoma and mild cataracts, which caused her to feel intense pressure behind her eyes and blurred vision. (R. 258.) As a result of this diagnosis and further treatment, on May 15, 2009, Plaintiff's doctor found she was able to do work-related activities that require a visual acuity of 20/25. (R. 256.)

After the alleged disability onset date, Plaintiff was examined numerous times by her treating physicians and state agency physicians. These examinations resulted in findings of other minor and intermediate medical ailments. First, on October 13, 2009, Plaintiff complained of numbness, swelling, and pain in her feet to her physician. (R. 309.) Her podiatrist diagnosed her with an ingrown toenail and debrided her toenails. (R. 325.) Next, in July and September 2010, Plaintiff was treated for chest pain and shortness of breath and was diagnosed with an enlarged heart and biatrial abnormalities (R. 328, 354.)

Next, on June 26, 2009, Plaintiff was seen by Dr. Emereuwaonu, at the behest of the Disability Determination Bureau. (R. 260.) During the examination Plaintiff complained of severe lower back pain and left leg pain that intensified during prolonged standing or walking. (*Id.*) Dr. Emereuwaonu noted that Plaintiff had left leg tenderness, right elbow tenderness, mild difficulty walking, lumbar flexion of forty degrees (ninety degrees is normal), and right elbow flexion and extension of twenty degrees (one hundred and fifty degrees is normal). (R. 262–264). Finally, on November 19, 2009, Plaintiff was examined by a state agency consultative psychologist and was diagnosed with adjustment reaction with depressed mood. (R. 285–288.)

**(3)** *Plaintiff's Testimony*

At the hearing, Plaintiff testified that she suffered from numerous physical ailments that affected her upper body, lower body, and physical senses. First, the Plaintiff asserted that she was unable to completely extend her right arm and reach upward as a result of a fracture that never properly healed. (R. 52, 55.) Plaintiff stated she has substantial pain in her lower back caused by arthritis that is treated by the painkillers Naproxen and Tramadol that often cause her to be dizzy, drowsy, and generally "in a fog." (R. 47, 53.) Next, she complained of foot pain that

stopped her from driving, prevented her from walking significant distances, and has been treated by a podiatrist. (R. 39, 47–48.) Plaintiff also testified at the hearing that her left leg is shorter than her right which causes her to limp and necessitates the use of a cane. (R. 48.) Additionally, Plaintiff has been treated within a year of the hearing for diabetes, shortness of breath, and chest pain. (R. 49–50.) Finally, Plaintiff has ocular degeneration that causes blurry vision up to five times a day, but can be successfully addressed through the use of eyedrops. (R. 50–52.)

**(4)** *Vocational Expert's Testimony*

Vocational Expert ("VE"), Stephen Sprauer, testified at Plaintiff's hearing before the ALJ on January 12, 2011. (R. 57.) After the VE testified that the Plaintiff could not perform her past work because of her physical limitations, the ALJ asked whether there was any work someone of Plaintiff's age and physical condition could perform. (R. 61.) The VE then testified that someone with Plaintiff's experience and residual functional capacity for work could serve as a counter clerk. (*Id.*) In Plaintiff's region there are approximately 9,500 jobs that fall into this category. (*Id.*)

Two more significant hypothetical questions were posed to the VE following the ALJ's initial round of questioning. First, the ALJ posed a hypothetical that assumed all of the same conditions as above, but added the requirement that the Plaintiff have a "sit/stand option." (R. 63.) The VE replied that Plaintiff would not be able to find any work if Plaintiff did require a sit/stand option. (*Id.*) Next, Plaintiff's counsel posed a hypothetical that raised the issue of having occasional near visual acuity as a counter clerk and the impact a lack of near acuity would have on work as a counter clerk. (R. 64.) The VE testified that if Plaintiff was unable to satisfy this occasional near acuity requirement she would be unable to work as counter clerk. (*Id.*)

5

**(5)** *ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 24.) The ALJ classified Plaintiff's obesity, asthma, lower back arthritis, left hip and knee pain, neuropathy, left leg fracture with implantation, and ocular degenration as severe impairments. (R. 14.) However, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16.)

The ALJ found that Plaintiff possessed a residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b). (R. 17.) However, the ALJ noted that she could only engage in light work if she was never required to climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and engage in overhead reaching. (*Id*.) Finally, the ALJ noted that the Plaintiff could only perform work that was simple, routine, and repetitive (*Id*.)

The ALJ addressed all of Plaintiff's self-confessed limitations and found her testimony to be inconsistent with the objective medical evidence. (R. 17–20.) The ALJ was troubled by inexplicable increases in Plaintiff's self-professed limitations, within very short periods of time, with no physical explanation. (R. 20.) The ALJ then noted that two of Plaintiff's examining physicians contradicted her testimony. First, the ALJ referenced Plaintiff's ophthalmologist who stated that Plaintiff could perform "work related activities that require a visual acuity of 20/25." (R. 21.) The ALJ then considered the examination of Plaintiff by Dr. Emereuwaonu who observed no significant abnormalities in the Plaintiff and that he observed her to walk normally without the use of a cane. (*Id*.) The ALJ gave great weight to this opinion because it was

6

"supported by [the doctor's] objective findings and is consistent with other opinions of record." (*Id.*)

Plaintiff claims the ALJ erred in five ways when denying her application for social security disability benefits and has appealed the decision. According to Plaintiff, the ALJ erred by: (1) assuming, since she received unemployment insurance, she could afford x-rays; (2) finding her macular degeneration was a severe impairment, but failing to find any visual limitations in the RFC assessment; (3) improperly considering Plaintiff's obesity; (4) improperly evaluating Plaintiff's credibility; and (5) failing to include any limitations regarding Plaintiff's ability to stoop and use her right arm. (DE 16, Pl.'s Br. at 8-21.)

**C. Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g.) The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005.) Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971.) This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005.) This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002.)

**D. Disability Standard**

To qualify for Disability Insurance Benefits or Supplemental Security Income claimants must establish that they suffer from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A.) The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004.)

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001.) A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. (*Id.*) The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000.)

**E. Analysis**

Plaintiff claims the ALJ erred in five separate instances in denying her application for social security disability benefits and has appealed the decision. Plaintiff does not challenge the first four steps of the five step inquiry as to whether a claimant qualifies for disability benefits. Accordingly, this court will only examine whether the ALJ relied on substantial evidence in

determining the credibility of Plaintiff's testimony and if she was able to perform any other work compatible with her residual functioning capacity.

**(1)** *Substantial evidence supports the ALJ's credibility determination*

An ALJ's credibility finding is entitled to "considerable deference" and will only be overturned if patently wrong. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). "This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does." *Sims v. Barnhart*, 442 F.3d 536, 537–38 (7th Cir. 2006). The ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); 20 C.F.R. § 404.1529(c) (2010); *see also* SSR 96-7p, 1996 SSR LEXIS 4. An ALJ may find that an individual's statements are "credible to a certain degree." SSR 96-7p, 1996 SSR LEXIS 4.

Here the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 19.) However, the ALJ found that the "claimants testimony regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" Plaintiff's assessed residual functional capacity. (*Id*.) The Plaintiff alleges the ALJ erred in her overall credibility finding and assuming that Plaintiff could afford knee x-rays since she was receiving unemployment benefits. (DE 16, Pl.'s Br. at 8-9, 18-20.)

The ALJ's credibility determinations were not patently wrong. The ALJ explained the credibility decision in a rational and logical manner and it was supported by substantial evidence in the record. The ALJ's findings took into account Plaintiff's testimony and the medical

9

evidence regarding Plaintiff's ability to perform a light level of work with some physical restrictions. The ALJ's statement regarding the x-rays was placed in the larger context of overall credibility and was one of many examples where Plaintiff's subjective complaints were inconsistent with her pursued course of treatment. (R. 20.) For example, immediately preceding the statement regarding knee x-rays, the ALJ noted that, despite reports of disabling foot pain, Plaintiff failed to appear at two scheduled appointments. This portion of the ALJ's credibility analysis also corresponds to multiple reports from Plaintiff's examining physicians that noted no significant physical abnormalities and that Plaintiff could walk normally without an assistive device. (R. 19, 21.) Accordingly, the ALJ did not err in her analysis of Plaintiff's failure to attain knee x-rays as it was one small, well-reasoned piece of the credibility determination and resultant residual functional capacity finding.

Since the ALJ relied on substantial evidence of record to make the credibility determination, and they were not patently wrong, Plaintiff's argument that the ALJ erred in her credibility determination fails. *See, e.g., Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004.) ("An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong.")

**(2)** *The ALJ properly concluded that Plaintiff is able to perform a light level of work considering her numerous impairments*

Plaintiff asserts that the ALJ erred in finding that her residual functional capacity allowed her to perform light work so long as Plaintiff could work within certain physical limitations. Specifically, Plaintiff alleges that the ALJ erred in determining her residual functional capacity by not including a restriction based upon Plaintiff's macular degeneration, improperly excluding analysis of Plaintiff's obesity, and failing to include any limitations regarding Plaintiff's ability

10

to stoop and use her right arm. Since Plaintiff's previous work was not sedentary, the burden shifts to Defendant to show that Plaintiff can perform some other job. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993).

In this case, the ALJ relied on both medical and non-medical evidence in assessing Plaintiff's residual functional capacity to do light work. The ALJ's finding is supported by substantial evidence including: reports from Plaintiff's treating physicians; the report of consultative examiner Dr. Emereuwaonu; the report of Plaintiff's ophthalmologist Dr. Williams; her own testimony regarding her positive responses to diabetes medication and eyedrops to alleviate issues from her macular degeneration; and Plaintiff's own statements regarding her ability to attend church and assist with the care of her grandchildren during the alleged disability period. Additionally, the ALJ addressed and accounted for Plaintiff's obesity in three separate instances in her opinion, thus satisfying her duty to address all of Plaintiff's impairments. (R. 14, 16.) Accordingly, the ALJ deliberated with a sufficient amount of information to allow her to be the final arbiter of all facts for the Commissioner of Social Security. 20 C.F.R. § 404.1527(e)(2.)

The ALJ's decision adequately analyzed the state agency physicians' reports when determining Plaintiff's residual functioning capacity, as well as reports from Plaintiff's own physicians. A critical element of the ALJ's decision, which exhibits careful thought and consideration of the evidence, was the rejection of the hypothetical posed by Plaintiff's counsel to the VE. (R. 23-24.) The ALJ articulated two bases for rejecting this hypothetical, both of which relied on testimony or reports from Plaintiff's physicians. This careful analysis demonstrates that Plaintiff's subjective complaints about her condition were considered, but were insufficient to change the ruling because of the overwhelming amount of conflicting medical evidence.

The ALJ considered relevant evidence and reasonably concluded that Plaintiff could perform light work as long as the proper physical restrictions were adhered to in the work place. Therefore, it was rational for the ALJ to find that Plaintiff's impairments were severe, but not to the extent that Plaintiff could not perform light work where some physical restrictions were in place. Accordingly, the Court must affirm the ALJ's decision regarding Plaintiff's ability to perform a light level of work with some physical restrictions.

**F. Conclusion**

The ALJ decided Plaintiff's claim using the correct legal standard and the decision was supported by substantial evidence. Therefore, the ALJ's decision is affirmed.

SO ORDERED on September 23, 2013

      s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE